Evans J.
delivered the opinion of the Court.
If one be living on land, his possession is not restricted to the house in which he resides, but extends over all that he claims, with cr’or cf title. The samo rule applies equally when the possession is by a tenant. The landlord may acquire title to a whole tract by the possession of his tenant on a part. In such case, he may tack the possessions of several tenants to complete the statutory term necessary to give title under the Statute of Limitations. The reason is obvious; the possession of the tenant is the possession of the landlord. If a trespass be committed on that which is in the occupancy of the tenant, and an injury be done to him, he may maintain an action for such trespass; and where there is a lease, and the landlord has only a reversionary interest, the tenant alone can sue for a trespass on his possession, unless there be an injury to the reversion, when the landlord may sue in case. Cannon v. Hatcher, 1 Hill, 260. But if the trespass be committed on a different part of the land from that occupied by the tenant, the landlord may maintain trespass for it, although he has no other possession than that of his tenant or agent residing on the land by his permission, as was decided in Davis v. Clancy, 3 M’C., 422.
If the defendants had turned Dixon out of the house, then it is likely Dixon might have maintained an action against them for that trespass: but he set up no claim to the field; that was Johnson’s possession, and the trespass was on his rights, and not Dixon’s. Since, therefore, the jury have found that the sale to Dixon had been legally rescinded, and that his possession was by Johnson’s permission, I think there is no doubt that Johnson had such possession as will maintain this action.
The remaining question is that made by the plea of liberum ten-
*146 ementum, whether the field was within the M’Nair grant. In 1 o-cating land, the object is to ascertain what was intended to be included within the description given in the grant. It is a question of intention; and in arriving at the intention, certain rules have been suggested by experience, wdiich have grown into canons, and are usually called the rules of location. These rules are well laid down in Bradford v. Pitts, 1 Mill. Con. Rep. 115, and have been repeated in a great number of cases since. The great principle which runs through them all, is, that where you cannot give effect to every part of the description, that which is more fixed and certain shall prevail over that which is less so: thus natural marks, such as rivers, creeks, rocks, and the trees, marked by the surveyor, or the lines of adjacent lands, when ascertained, are more conclusive evidence of what was intended, than distances or even courses; and therefore one of the rules of location universally recognised is, that “course and distance must yield to actual marks, whether natural or artificial,—but in the absence of these, course and distance must determine the location.” Coats, v. Matthews, 2 N. & M’C., 99. In Colclough v. Richardson, 1 M’C., 167, it is said, “a correct location consists in the application of any one or all of these rules to the particular case; and when they lead to contrary results, that must be adopted which is most consistent with the intention apparent on the face of the grant.” When we examine the plat in this case, the apparent intention is to include within it all the lands lying within certain lines, running certain courses and distances from the black jack corner on Kenneth Morrison’s land on the one side, to Alexander M’Intosh’s land on the other Morrison’s land is found as represented; but when the lines are run along the courses called for, the distances will not carry you to M’Intosh’s land. In such case, as the intention is clear that M’Intosh’s land is to be the boundary on that side, the distances must be increased until you reach the boundary at I. H. In this way, courses, distances, the form of the plat, and every thing indicating the intention of the grantor, is preserved, except that in conformity with the rule, the length of the lines is increased in order to preserve the boundary. But for this boundary, the lines would be *147 closed by the line S. J.; and the rule, that natural or artificial boundaries will control distances or courses, authorises no other departure from the course and distance than such as is necessary to effectuate the apparent intention to bound the land on that side by M’Intosh’s land. The plat affords no evidence of any intention that the line from W. should extend beyond fifty chain", to B., or that the boundary on that side should be C. E. F. G. H. instead of B. O. P. L. S. K. This latter boundary preserves the shape of the plat, the courses and distances, without alteration, except such increase of distances as is necessary to preserve the boundary on the lines A. J. I. and N. S. K. This, it seems to me, is the true location, and is in conformity with what I suppose to be the true rule, that distances may be increased, and sometimes courses departed from in order to preserve a boundary; but this rule authorises no other departure from the former than such as is necessary to preserve the latter. But in this case, if we begin at X. and round by Y. Z. V. A. J. to I., and thence along the M’Intosh line, the distance called for to H. and thence course and distance to E., and close from that point by course and distance, the field will be still without the M’Nair grant; the distance from E. will stop at I, and the course from this will intersect the line L. W. at 2. There is no avoiding this conclusion, unless we adopt in its broadest latitude the principle upon which the defendant’s surveyor made his plat; that is, that the oldest survey is to be located so as to include the greatest possible quantity of land. There is such a principle as, that a grant, or deed, shall be construed most strongly against the grantor. Such a principle seems to have been recognised by Judge Nott in the case of Slopes v. Holladay, 1 M’C., 255, as applicable to grants. In that case, it is said that cceteris paribus, that principle applies. But this rule I apprehend does not authorize such an entire distortion of the plat, and protracting of lines, as will be necessary to include the field where the trespass was committed within the M’Nair grant. The rule I think, in its application, goes no further than this, that if no principle of location be violated by closing from one of two points, you may close from that which will be most against *148 tbe grantor, and include tbe greatest quantity of land. If, in this case, M’Intosh’s land was not called for, and the land was to be located by course and distance, and the distance on one line would stop at A., and by running round on the other side, the distance would go to S., then the lines should be closed by running a line on the course from S., and by protracting the other line until they meet at J. This would be locating the land most strongly against the grantor, without violating any of the acknowledged rules of location, and this, it seems to me, is all that is meant by the principle. In any view which I am able to take of this case, I think the verdict is right, and the appeal is dismissed.
O’Neall J. did not hear this case.